## SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# YORK.

### AUGUST TERM,

### 1821.

---

### SCAMMON *v.* THE PROPRIETORS OF THE NEW CONGREGATION-AL MEETING-HOUSE IN SACO.

*Where several persons were appointed proprietors' agents, and received funds, to erect a meeting-house, some of whom squandered the money entrusted to them ; and afterwards they all joined in an action against the proprietors for services performed and monies expended ; it was holden that one of them was barred of his separate action for the money by him paid, though the sum far exceeded the general balance recovered in the joint action against the proprietors.*

*ASSUMPSIT.* The plaintiff alleged in his declaration that he had made two notes of 2500 dollars each to the *Saco* bank, and renewed them from time to time, for the use and benefit of the defendants, upon their promise to indemnify him against the payment of said notes ; but the defendants had not indemnified him, but suffered him to be sued, and his estate taken to satisfy said notes. Also, that certain persons, for whose doings the defendants are liable, elected the plaintiff one of a committee to build a new meeting-house, and promised that if he would accept the office and execute its duties, they would elect faithful associates with him, for whose doings they would be responsible ; but that he had suffered damage by the misconduct of his associates, &c. for which he was not indemnified.

The defendants, besides the general issue, pleaded in bar that the plaintiff, with other persons named in the plea, commenced and prosecuted to final judgment a suit against the de-

fendants, and that the cause of action in this suit was included, in and was part of the same cause of action commenced by the plaintiff and others against the defendants.

The plaintiff replied that the parties in the former suit and the parties in this suit were not the same, and that the cause of action in that suit and in this were not the same; and tendered an issue to the country which was joined.

At the trial of this issue, before *Wilde J.* at *November* term 1819, the defendants read in evidence the copy of record of the former judgment, mentioned in their plea, by which it appeared that the action while pending had been submitted to referees under a rule of Court; and proved by two of the referees that the sum recovered in judgment by the *Saco* bank against *Scammon* and set forth in his declaration, was allowed to *Scammon and others*, plaintiffs in the action mentioned in the plea in bar; and that their award, upon which judgment was rendered, was for the balance due to *Scammon and others*, after allowing them the amount of the judgment in favour of *Saco* bank, and sundry other charges; and it was admitted that the amount of this judgment in favour of *Scammon and others* was paid to *Scammon.*

The plaintiff then offered to prove that certain individuals, for whose doings the defendants are by law liable, on the fifth day of *January* 1802 elected the plaintiff first, and afterwards, at the same meeting, chose four other persons, viz. *Seth Storer, Foxwell Cutts, James Gray* and *Edmund Moody* a committee to build a meeting-house now owned by the said proprietors;–that the committee proceeded to build the house;—that the proprietors, on the seventeenth day of *September* 1803 at a legal meeting authorized the committee to borrow money to complete the house;—that accordingly they hired of *Saco* bank 5000 dollars, for which they gave two promissory notes signed by some of the committee and indorsed by *Scammon*, who in fact received no part of the money, it being paid to *Gray, Cutts* and *Storer;*—that said notes after being several times renewed, were at last taken into one note, signed by *Cutts* and *Gray* and indorsed by *Scammon*, who was sued as indorser, and his estate taken in execution to the amount of 3,341 dollars in part payment thereof; —that *Cutts* is dead leaving no estate, and that *Gray* is insolvent.

The plaintiff further offered to prove by the records of the proprietors that the committee on the tenth day of *April* 1805, were directed to discharge all the debts of the proprietors, except the sum due to *Saco* bank ; and that on the second day of *January* 1811 their treasurer was directed to pay in the first place the sum due to *Saco* bank ;—and further offered to prove that each member of the committee received and paid out money of the proprietors without the concurrence of his colleagues, and kept his accounts with the proprietors alone; and that these facts were known to the defendants ;—that large sums of money were received and misapplied by *Cutts* and *Gray*, but that the plaintiff had been faithful in his office, and had truly accounted for all money by him received.

All this evidence offered by the plaintiff was rejected by the Judge, on the ground that the plaintiff, having recovered, with the other members of the committee, the sum of 3341 dollars in the former action, could not recover it again in this ; although it should appear that he had suffered by the unfaithful conduct and insolvency of his colleagues ; no evidence being offered to prove that he had sustained any damages beyond the amount of the sum so recovered in the former action.    A verdict was thereupon taken for the defendants, subject to the opinion of the whole Court upon the question, whether this evidence ought to have been admitted.

This question was argued by *J. Holmes* and *Shepley* for the plaintiff, and *Emery* for the defendants, before *Weston J.* at the last *April* term in this county, the *Chief Justice* and *Preble J.* having formerly been of counsel, and therefore not sitting in the cause.

*Shepley, for the plaintiff.*    The plaintiff, with other persons, having been chosen a committee to build a meeting-house, and a portion of the funds placed in their hands for this purpose having been misapplied by some of his colleagues, the question is, on which of the parties the loss thus occasioned shall fall ?

This question will be answered by considering, *first*, whether the plaintiff would be entitled to recover upon the facts stated, if the former judgment does not operate as a bar ;—and *secondly*, whether the money now sued for, has already been recovered in the former action ?

As to the *first point*, the plaintiff ought to recover, unless the responsibility of the committee was joint, and not several. But to create a joint responsibility, there must be a joint act, or a prospect of joint gain. The latter there could not be, from the nature of their business ; each laboring for his own reward, and entitled, like one of a board of Selectmen, to his compensation according to his individual labour, and not according to the total amount performed by the whole committee. Nor did they act jointly. Each one received and paid money, and kept his own accounts without the concurrence of his colleagues ; and even in the act of borrowing from the bank, each received for himself, as he thought proper, though several joined in the security given. But if it was a joint act, yet it was not a voluntary association, for the purpose of joint profit, but merely a concurrent performance of an order of the proprietors, who alone ought to be answerable. The relation in which the committee stood to each other may be likened to the case of joint prize agents, one of whom squanders the money,—as in *Penhallow v. Doane's adm'rs.* 3 *Dall.* 88. 103. 115.—or to joint trustees under a will, as in *Kips, adm'r v. Deniston,* 4 *Johns.* 23. *Cro. Car.* 312. 1 *Eq. Ca. Abr.* 398. 1 *Atk.* 89. 3 *Atk.* 583. 2 *Vern.* 515. *Ambl.* 218. 4 *Ves. jr.* 596.—or to joint managers of a lottery, as in *Gilbert v. Williams,* 8 *Mass.* 476.

And if the legal interest and cause of action be several, although the words of the contract are joint, each may sue separately. 1 *Chitty on Pleading* 6. *Eccleston v. Clipsham,* 1 *Saund.* 153. *note* 1. *Shaw v. Sherwood, Cro. El.* 729. *Tippet v. Hawkey,* 3 *Mod.* 263. *Anderson v. Martindale,* 1 *East* 497. *Osborne v. Harper,* 5 *East* 225. *Wilkinson v. Lloyd,* 2 *Mod.* 82.

Justice requires that every man be permitted to seek redress unincumbered with associates, if no injustice is thereby done to others. And the law sustains such separate action on very slight grounds. *Hall v. Leigh,* 8 *Cranch* 50. *Blakeney v. Evans,* 2 *Cranch* 185. *Harris v. Johnston,* 3 *Cranch* 311. *Dunham v. Gillis,* 8 *Mass.* 462. *Wilkinson v. Lloyd,* 2 *Mod.* 82.

As to the *second point*,—whether the sum now sued for has been recovered in the former action,—it is observable that *that* action was brought to settle the whole account between the committee and the proprietors, supposing all to have acted faith-

fully ;—*this* is to recover damages for a loss suffered by the plaintiff by the misconduct of some of his colleagues ;—*that* was to ascertain whether a deficiency had happened in the funds, and how it was occasioned ;—*this* to recover the loss which was discovered by that investigation ;—*that* suit was in the nature of an action of account, to settle the money transactions of the concern ;—*this* is of the nature, and resembles an action of the case for the unfaithfulness of the defendants' servants ;—there was no count, in the former writ, for any cause except the adjustment of the accounts of the parties ;—but the *gist* of the present action is the unfaithfulness of the men whom the defendants appointed to act with the plaintiff, and the money counts only serve to shew his own estimate of the extent of the injury. There was no claim advanced, in the former suit, for any damage to the present plaintiff exclusively ; but this action is brought to recover for a loss sustained by him alone.

Had the committee, in that action, jointly claimed of the defendants a sum squandered by one of themselves, the demand could not have been supported for its absurdity. Is it not equally absurd to permit the defendants to claim the benefit of such a sum by way of offset in this action ?

The objection thus considered amounts to this, that the plaintiff ought not to recover in this action for the misconduct of his colleagues, because he adopted the only measure which could bring that misconduct and his own injuries to light ; by joining with them in a suit against the proprietors, in which all the conduct of the committee might be the subject of investigation.

But in whatever light the plaintiff's claim may be regarded upon the points submitted, yet the verdict ought to be set aside and a new trial ordered, because the question decided by the Judge was a question, not of law, but of fact ; and should have been determined by the jury.

Whether an action can be maintained for a cause already determined in a prior suit between the same parties, is a question of law ; but whether the plaintiff in *this* action has already recovered the subject matter of his suit by a former judgment, was the *fact* to be tried. It was a question of identity of the two causes of action, and might have been given in evidence under *non assumpsit.* 7 *Cranch* 565. It was a fact put in issue to the country, and therefore improperly tried by the Judge.

Scammon *v.* Propr's of Saco meeting-house.

The evidence offered was rejected, not because it was illegal, or irrelevant; but because, in the opinion of the Judge, it was not sufficient to explain or rebut the testimony offered by the defendants. But no such case existed as authorized the Judge to decide on the weight of evidence. The great point in issue between the parties was, whether the plaintiff or the defendants were responsible for the misconduct of his colleagues; and this question never has been tried.

*Emery, for the defendants.* It is apparent from the report of the Judge that the committee were all chosen " at the same time"; and if the plaintiff was unwilling to act with his colleagues, he might have declined on the spot. He was under no constraint; and consenting to serve, he consented to risk the fidelity of the others. There is no stronger implication of a request by the defendants to the plaintiff to serve, and a promise on their part to indemnify him, than there is of a request by the plaintiff to obtain the office, and a promise on his part to risk the consequences of the misconduct of his colleagues. The engagement was mutual. It was joint on the part of the committee; they acted jointly; received the money jointly, and might have controled each other in its expenditure, or divided it among them. The injury complained of was the payment of money to *Saco* bank, the borrowing of which was a joint act of all the committee except *Moody.* The money was originally paid over to *Gray* and *Cutts,* and the notes indorsed by the plaintiff as last indorser. The plaintiff therefore had the control of the whole sum taken from the bank, and if it was squandered, it was paid, with his express assent to the persons who squandered it. All joined in the act; and if only one received the money, yet all are liable. *Toller's Ex.* 485.

As to the identity of the two causes of action; the first suit shews a complete developement of all the concerns of the defendants and of the committee, and a demand of the sum now sued for, which was allowed to the plaintiffs. The former judgment was in effect in favour of the present plaintiff; he elected a joint remedy; the action was brought at his instigation; there was a joint investigation of the accounts, and a joint judgment, and the plaintiff received its amount. If he was not willing that the money thus paid to *Saco* bank should be allowed by the

defendants to the whole committee, he should at least have protested against its allowance before the referees. He has voluntarily placed himself in the situation he complains of; has sought his remedy by another action, and has had it.

Courts regard rather the substance of the action, than any niceties of form. In pleading the pendency of another suit, in Chancery, it is not necessary to aver identity of parties. It is against the policy of the law to permit a party to be twice vexed for the same cause of action; and the law will repress every attempt to try, by any other forms of action, what has once been tried. *Cooper's Plead.* 272. 273. *Calhoun v. Dunning,* 4 *Dall.* 120. *Bird v. Randall,* 3 *Burr.* 1353. *Ferrar's case,* 6 *Rep.* 7. 3 *Lev.* 180. 1 *Com. Dig. Action, K.* 4. *Higgins' case,* 6 *Rep.* 45. *Ward v. Johnson,* 13 *Mass.* 148.

Nor did the Judge, in rejecting the evidence offered, invade the province of the jury. The main question was whether the defendants were *liable* for the misconduct of the plaintiff's colleagues; and this, it is obvious, was a question of law.

*J. Holmes, in reply.* Where agents are appointed by a corporation, they are not responsible for the conduct of each other. The trust confided is to them or either of them. Here the duties of the committee were necessarily diverse, each performing a distinct part of the service, and responsible to the proprietors for his own misdoings. The committee had no control over the conduct of any one of their number for he was not *their* agent, but the agent of the proprietors. If he squandered the money in his hands, it was not the money of the committee, but of the corporation. Could the committee remove him for breach of the trust? And if he is not amenable to his colleagues, by what rule of law or equity are they to be made liable for his misconduct?

As to the former action; it exhibits a view of the relations between the proprietors and their committee collectively, but nothing more. It shews that the proprietors were indebted to their agents in a certain sum beyond what monies they had advanced. This sum was paid to the present plaintiff, who had a right to receive it as one of the co-plaintiffs in that action; and it has extinguished so much of his claim of 3341 dollars. But that recovery is no bar, unless the cause of action is identical

with this; which it is not unless the same questions can be discussed, the same evidence offered, and the same result obtained.

The trial of the present action had advanced as far as this question,—whether the plaintiff had abandoned his right to maintain a separate action for his own damages by uniting with his colleagues in a joint action ?—and it ought to have been left to the jury to determine whether his acts amounted to such intentional abandonment or not.

Weston J. If the evidence rejected by the Judge, who presided in the trial of this cause, could be received, and would legally entitle the plaintiff to maintain his action, his claim in equity against the defendants for indemnity, seems to be sufficiently strong.

It is contended by the plaintiff that from the evidence rejected it would fully appear, that he has been compelled to pay a large sum of money, for what was in fact the proper debt of the defendants ; that neither at the time of this payment nor at any time before had he funds of theirs in his hands ; nor had he been at any time their debtor. That he is not accountable for the misapplication of money on the part of his colleagues, who were the agents and trustees of the defendants, by them chosen and appointed, and that his claim to be reimbursed, for sums actually expended in their behalf, ought not to be impaired by deducting therefrom monies received by other members of the committee, and by them retained to their own use. That the committee were severally, and not jointly, answerable to the defendants for the amount by them respectively received, and that it would be altogether unjust to throw upon the plaintiff the loss occasioned by the unfaithfulness and insolvency of the persons associated with him, which happened by reason of a trust and confidence reposed in them, not by himself, but by the defendants.

There is certainly much weight in these positions ; and they are supported by respectable authorities, cited in the argument of this cause.

But whatever objection might be urged to the right of the committee to claim a reimbursement for their advances, and to be held accountable for monies by them received, in their

several, and not in their joint, capacity ; no doubt can be enter-
tained that they might rightfully unite- either in adjusting or en-
forcing their demands, if they elected so to do.   It was not com-
petent for the defendants to object to this course, which was not
only altogether unexceptionable in itself, but most eligible for
them.   Now it clearly appears from the pleadings and evidence,
and from the verdict in this case, that the cause of action upon
which this suit is brought, was included in, and formed a part, of
the same cause of action which was formerly instituted by the
plaintiff, together with other members of the committee his col-
leagues, upon which judgment was rendered against the defen-
dants ; and the execution which issued thereon by them satisfi-
ed and paid to the plaintiff.   The amount here claimed consti-
tutes a particular and distinct item in the account, upon which
that action was founded.   The subject matter of this action hav-
ing thus, by the former suit, passed, *in rem judicatam*, and the
judgment rendered thereon having been satisfied, the defendants
are thereby forever discharged from all further liability on this
account to the plaintiffs in that suit, or to either of them.

If the course adopted by the plaintiff in uniting in the former
action, has given an advantage to the defendants of which they
could not otherwise have availed themselves ; it was a conse-
quence which he might have foreseen, and which necessarily
resulted from the nature of that action.   But the plaintiff had
probably not made himself exactly acquainted with the state of
the account between the parties ; and no doubt believed that up-
on an adjustment of the whole concern, between the committee
and the defendants, the latter would have been found indebted
in an amount sufficient to reimburse him for the sum he had
been compelled to pay, in consequence of the liability he had
assumed on their account.   In that expectation he has been dis-
appointed ; but having sought and pursued his remedy in one
mode to final judgment and execution, it is now too late for him
to resort to another, which, had it been originally adopted,
might have been attended with less hazard, and furnished him
with a more complete indemnity for the loss he has sustained.

The liability of the plaintiff for the sum, he was finally com-
pelled to pay, was of many years continuance ; during which the
death of one, and the insolvency of both those, who had united

in assuming the same liability, intervened. Had he been more vigilant in procuring an early adjustment of the business, confided to him and his associates, he might probably have been protected from a loss, which has become irretrievable, unless from the liberality of the defendants ; if they should be disposed voluntarily to recognize the equity of his claim.

Being, therefore, satisfied that the direction and opinion of the Judge, who presided at the trial, was correct, judgment must be rendered upon the verdict.